**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

JAIMIE CAWLEY and DEBBIE KUCIVER, on
behalf of themselves and all others similarly
situated,

Plaintiffs,

v.

KSF ACQUISITION CORPORATION d/b/a
SlimFast and Slim-Fast,

Defendant.

Case No.: 7:21-cv-09421

**AMENDED COMPLAINT**

---

Plaintiffs Jaimie Cawley and Debbie Kuciver, on behalf of themselves and all others

similarly situated ("Plaintiffs"), by and through their undersigned counsel, Denlea & Carton

LLP, Kravit Smith LLP, and Sheehan & Associates, P.C., state for their Complaint against KSF

Acquisition Corporation d/b/a SlimFast and Slim-Fast ("KSF," "Defendant," or "SlimFast"), as

follows:

<u>**PRELIMINARY STATEMENT**</u>

> *The claim "Clinically Proven: Lose Weight and Keep It Off,"*
> *appears prominently on the facing panel of each of SlimFast's*
> *more than forty food products (shakes, snacks, and bars), as well*
> *as in other SlimFast marketing materials….One of the messages*
> *reasonably communicated by the "clinically proven – lose weight*
> *& keep it off" claim on the package is that individual SlimFast*
> *food products have been clinically proven to result in weight loss.*
> *[SlimFast], however, acknowledges that individual products have*
> *not been clinically evaluated.  Accordingly, unqualified clinically-*
> *proven claims for the products are unsubstantiated.*
>
> *National Advertising Review Board, BBB National*
> *Programs, November 22, 2021 Decision*

1.      Weight is a significant public health issue in the United States with which our

consumer culture is obsessed.  This obsession has been fueled by, among other things, an

alarming increase in the incidence of obesity, diabetes, cardiovascular diseases, and other health conditions that are closely correlated with weight.  Disturbingly, the CDC reported that 78% of deceased Covid-19 patients had obesity or were overweight.  As a result, the U.S. weight loss consumer market reached a record value of $78 billion in 2019.  Domestically, the highly competitive meal replacement products segment of the weight loss industry generated over $9 billion in 2020 and is forecast to grow to over $12.5 billion by 2025.  Unsurprisingly, manufacturers have preyed upon consumers' concerns about weight gain and have flooded the marketplace with products promising to help consumers lose weight and keep it off.

2.     Defendant owns, operates, and does business as the branded weight loss and dietary food product business, SlimFast.  Defendant manufactures, markets, and sells SlimFast weight loss plans and food products, including meal replacement products.

3.     In a crowded field of meal replacement products, manufacturers aggressively compete with one another to differentiate their respective products and gain valuable market share.  In order to capitalize on ballooning consumer demand and increase its market share, Defendant has made false, misleading, and deceptive representations to consumers about the efficacy of its meal replacement products; specifically, that its products are "clinically proven" to cause and maintain weight-loss.

4.     Central to its ubiquitous marketing and advertising claims is Defendant's proclamation that each of its over fifty-three (53) SlimFast meal replacement products is "CLINICALLY PROVEN" to help consumers "LOSE WEIGHT & KEEP IT OFF." (the "Clinically Proven Claim").  As the National Advertising Division of BBB National Programs (the "NAD")[1] has stated, however, representations that a product's efficacy has been "clinically

---

[1]     The NAD is an independent system of self-regulation established by the advertising industry in 1971 and designed to build consumer trust in advertising.  It reviews national advertising in all media in response to third-

proven" "must closely match the underlying evidence because they are a promise that there is scientific evidence that establishes the truth of the claim. [Such] claims … convey an especially strong message to consumers." NAD Decision[2] at 3, n. 7.

5.      Unfortunately for unsuspecting consumers, however, the clinical studies and reports relied upon by Defendant do not support its Clinically Proven Claim because none of the SlimFast meal replacement products with respect to which Defendant has asserted the Clinically Proven Claim have been scientifically proven to achieve and maintain weight loss. It is axiomatic that before something can be proven, it must be tested. These products were never the subject of a clinical test. Accordingly, the Clinically Proven Claim is false and misleading with respect to each of the SlimFast Products (defined herein, *infra* at ¶ 35).

6.      Indeed, as set forth in the NAD Decision criticizing Defendant's use of the "clinically proven" moniker, Defendant has acknowledged "that SlimFast has not clinically tested the weight-loss efficacy of any of its current products that bear the claim 'clinically proven to lose weight and keep it off.'"[3] Moreover, as the NAD noted, Defendant did not dispute the fact that all of the clinical studies it relies on to support the Clinically Proven Claim tested products and plans that are ***different than*** any of the current SlimFast Products and Plans.[4] Stated otherwise, this is not a lack of substantiation claim; it is an affirmative falsehood based on

---

party challenges or through inquiries opened on its own initiative. The NAD's decisions set consistent standards for advertising truth and accuracy, delivering meaningful protection to consumers and leveling the playing field for business. An advertiser's failure to participate in the NAD's review of its advertising and/or failure to comply with the NAD's recommendations and decision results in the matter being referred to the appropriate regulatory agency, which is typically the Federal Trade Commission. NAD referrals receive priority treatment from the Federal Trade Commission.

[2]      All references herein to the "NAD Decision" are to the decision rendered by the NAD in *KSF Acquisition Corp. (Slim-Fast) v. Simply Good Foods, USA, Inc., Report #6952, NAD Case Reports (Aug. 27, 2021)*.

[3]      *Id.* at 6.

[4]      *Id.* at 6.

the absence of <u>any</u> testing.  Arrogantly, SlimFast did not even bother with the trope of an

"Industry Funded Study."  Instead, they just made claims divorced from any pretext of being

"clinically proven."

       7.     SlimFast appealed the NAD Decision to the National Advertising Review Board

("NARB") and by decision dated November 21, 2011 (the "NARB Decision") the NARB upheld

the NAD Decision in relevant part, namely the complete lack of support for SlimFast's Clinically

Proven Claim for its products.  According to the NARB:

> The claim "Clinically Proven: Lose Weight and Keep It Off," appears
> prominently on the facing panel of each of SlimFast's more than forty food
> products (shakes, snacks, and bars), as well as in other SlimFast marketing
> materials….One of the messages ***reasonably communicated*** by the "clinically
> proven – lose weight & keep it off" claim on the package is that individual
> SlimFast food products have been clinically proven to result in weight loss.
> [SlimFast], The advertiser, however, acknowledges that individual products have
> not been clinically evaluated.  ***Accordingly, unqualified clinically-proven claims
> for the products are unsubstantiated***.

NARB Decision (emphasis added).

       8.     Defendant's Clinically Proven Claim is patently false and misleading with respect

to each of the SlimFast Products because each such product (i) has not been "clinically proven"

to cause weight loss; and (ii) has not been "clinically proven" to maintain weight loss.

       9.     By deceptively misrepresenting the efficacy of each SlimFast Product, Defendant

has defrauded consumers into purchasing the SlimFast Products and has commanded and

continues to command a price premium for each such product.

       10.    Based on SlimFast's unfair and deceptive Clinically Proven Claim, Plaintiffs and

consumers like them purchased SlimFast Products that they believed were clinically proven to

cause and maintain weight-loss, and they purchased such Products with a reasonable expectation

as to their premium quality and efficacy.  Moreover, Plaintiffs purchased such SlimFast Products

notwithstanding the fact that similar meal replacement products not marketed as clinically

proven to cause and maintain weight loss were available from other manufacturers for much less money. Accordingly, Plaintiffs and their fellow class members have been injured because they purchased meal replacement products that they would not have otherwise purchased and/or they paid a premium for meal replacement products that were purported to be clinically proven to cause and maintain weight-loss but were, in actuality, not clinically proven to be an effective means for losing and maintaining weight. Simply put, Plaintiffs and members of their respective class were deceived by Defendant's fraudulent marketing of the SlimFast Products and Defendant profited from that deception at Plaintiffs' and their respective class members' expense.

11. By way of this action, Plaintiffs seeks to put an end to Defendant's unfair and deceptive marketing campaign built upon the premise that Defendant's products are "clinically proven" and to obtain the financial redress to which Plaintiffs and their respective class members are entitled.[5]

## THE PARTIES

12. Plaintiff Jaimie Cawley is an individual who resides in Yonkers, New York.

13. Plaintiff Debbie Kuciver is an individual who resides in Wood Dale, DuPage County, Illinois.

14. Defendant KSF Acquisition Corporation is a Delaware corporation with its principal address at 11780 US Highway One, Suite 400N, Palm Beach Gardens, Florida 33408, and a mailing address located at 3500 Lacey Road, Suite 1200, Downers Grove, Illinois 60515.

---

5 Similarly, Plaintiffs seeks to put other meal replacement product manufacturers on notice that their unlawful conduct will not be ignored so that they stop misleading consumers.

15.     KSF is registered with the Florida Department of State, Division of Corporations and, upon information and belief, owns, operates, and does business as Slim-Fast and SlimFast. KSF has registered the names Slim-Fast and SlimFast with the Florida Department of State, Division of Corporations.

16.     SlimFast manufactures, packages, markets, distributes, and sells (both online directly to consumers and through other online and brick-and-mortar retail stores, such as Walmart, Sam's Club, Amazon, Target, Shop SlimFast, Publix, Kroger, Meijer, Shipt, and Instacart), over fifty three (53) different meal replacement and weight management products and plans, including shakes, smoothie and shake mixes, snacks, meal bars, and more.

## JURISDICTION AND VENUE

17.     This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because (1) the amount in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs, and (2) the named Plaintiffs and Defendant are citizens of different states.  28 U.S.C. § 1332(d)(2)(A).

18.     The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a), as the parties are diverse and the amount in controversy exceeds the requisite threshold.

19.     This Court may exercise jurisdiction over Defendant because Defendant has sufficient minimum contacts in New York and purposely avails itself of the markets within New York through the promotion, sale, marketing, and distribution of its products, thus rendering jurisdiction by this Court proper and necessary.

20.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred within this judicial district and

because Defendant has marketed and sold the products at issue in this action within this judicial

district and has done business within this judicial district.

## CHOICE OF LAW

21.     New York law governs the state law claims asserted herein by Plaintiff Cawley

and the New York class she seeks to represent.

22.     New York has a substantial interest in protecting the rights and interests of New

York residents against wrongdoing by companies that market and distribute their products within

the State of New York.

23.     Illinois law governs the state law claims asserted herein by Plaintiff Kuciver and

the Illinois class she seeks to represent.

24.     Illinois law has a substantial interest in protecting the rights and interests of

Illinois residents against wrongdoing by companies that market and distribute their products

within the State of Illinois.

## FACTUAL BACKGROUND

**I.      Due to the Premium Consumers are Willing to Pay for Products That are Backed by
          Science, Manufacturers Routinely Misrepresent That Their Products Have Been
          Scientifically Proven to be Effective.**

25.     Consumers who are concerned about health are particularly vulnerable targets for

unscrupulous manufacturers and advertisers.  Such consumers are willing to pay a premium for

health products that are scientifically proven to be effective.  In an overcrowded marketplace

where beneficial health claims are ubiquitous, being able to demonstrate the efficacy of a product

is critical.  Unsurprisingly, in order to differentiate their products and gain a competitive edge,

manufacturers and advertisers routinely mislead consumers by claiming that the efficacy of their

products is backed by science (*i.e.*, "establishment claims"), when, in fact, it is not.  Equally

unsurprising is the fact that Courts are wary of claims by manufacturers that their product has been scientifically proven to be effective when those claims are false.

26.     Establishment claims are held to the highest standard of proof because the message that they convey to consumers is especially strong.  As the NAD has repeatedly stated, "[e]stablishment claims are powerful claims that should be reserved for products that have clinical human testing as support."[6]

27.     An advertiser's health-related claims about the efficacy of a product must "be supported with 'competent and reliable scientific evidence,'" which the Federal Trade Commission (the "FTC") defines as "'tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that have been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.'"[7]  As the FTC has stated, "well-controlled human clinical studies are the most reliable form of evidence."[8]

28.     Defendant is not alone in preying upon consumers with false promises of a product's submission to "clinical testing" in order to mislead and defraud consumers.

29.     For example, multiple class action lawsuits were commenced against Reckitt Benckiser LLC and RB Health (US) LLC (collectively, "Reckitt") beginning in or about June 2020, based on their allegedly false advertising claims that their Neuriva products are "backed by science" and "clinically proven" to improve brain performance (the "Neuriva Class Actions"). Similar to SlimFast's Clinically Proven Claim, the front packaging of the Neuriva products

---

[6]     NAD Decision at 10 (citations omitted).

[7]     FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

[8]     FTC, Dietary Supplements: An Advertising Guide to Industry, Section II(B)(2), at https://www.ftc.gov/tips-advice/business-center/guidance/dietary-supplements-advertising-guide-industry

included the claim that Neuriva contains "Clinically Proven Natural Ingredients" that improve "Brain Performance" in the areas of "Focus, Memory, Learning, Accuracy, [and] Concentration."  *See, e.g.*, *Williams v. Reckitt Benckiser LLC*, Case No. 1:20-cv-23564-MGC (S.D. Florida).

30.     After getting caught intentionally mislabeling its products, Reckitt agreed to pay more than $10 million and change their product labeling as part of a settlement.

31.     Similarly, multiple class action lawsuits were commenced against The Dannon Company, Inc. ("Dannon") alleging that Dannon had falsely and/or deceptively advertised that its probiotic yogurts, including Activia, offer clinically and scientifically proven health benefits. By way of example, similar to SlimFast's Clinically Proven Claim, Dannon falsely stated on the Activia label and other advertisements for the product that with "natural culture *Bifidus* Regularis, Activia eaten everyday is ***clinically proven*** to help regulate your digestive system in two weeks."  (emphasis added)  Moreover, Dannon prominently claimed inside every Activia label "CLINICALLY PROVEN to help in two weeks, when eaten daily."  Having been caught mislabeling its products, Dannon agreed to pay more than $50 million as part of a class wide settlement.

32.     Indeed, this is not the first time that Defendant has been brought to task for improperly attempting to take advantage of the substantial consumer demand for weight loss products and for engaging in efforts to cash in on that demand through false and misleading claims regarding its products.  In April 2020, a class action lawsuit was filed against SlimFast in the United States District Court, Southern District of New York, alleging that the company had made false representations of "clinically proven" weight loss results for SlimFast's Keto MCT Oil coconut oil-based product.  *See Maroney v. KSF Acquisition Corporation d/b/a SlimFast*,

Case No. 7:20-cv-02788-CS (S.D.N.Y.) (the "SlimFast Keto MCT Oil Class Action").  The

SlimFast Keto MCT Oil Class Action remains pending as of the date of this filing.

II.     **SlimFast Espouses the Efficacy of the SlimFast Products.**

33.     SlimFast was launched in 1977 as a controlled, low-calorie, meal replacement-

based plan accounting for approximately 1,200 calories per day.

34.     Today, SlimFast is one of the most recognizable names in the diet industry,

offering four different weight loss plans – the SlimFast Favorite Foods Plan, the SlimFast Keto

Plan, the current SlimFast Original Plan, and the SlimFast Diabetic Weight Loss Plan (the

"SlimFast Diabetic Plan," collectively with the SlimFast Favorite Foods Plan, the SlimFast Keto

Plan, and the current SlimFast Original Plan, the current "SlimFast Weight Loss  Plans") – and

more than fifty three (53) different meal replacement products, including, without limitation,

shakes, smoothies, bars, and snacks.

35.     SlimFast currently offers five (5) different lines of meal replacement products,

including the SlimFast Original, Advanced Nutrition, Advanced Energy, Keto, and Diabetic

Weight Loss lines.  ("SlimFast Products")

36.     Defendant markets, distributes, and sells each of the SlimFast Products to

consumers throughout the United States, including in New York and Illinois.

37.     Armed with the knowledge that meal replacement products that are clinically

proven to cause and maintain weight-loss are in great demand and, moreover, command a

premium price as compared to meal replacement products the efficacy of which has not been

scientifically established, Defendant, via its website, product packaging, and software application

called the SlimFast Together app (the "SlimFast App"), as well as through various other

platforms – including television and Internet advertisements, and social media – markets each of

the SlimFast Products by prominently displaying the assertion that the product is "CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF."

38.     The packaging of each SlimFast Product prominently bears the Clinically Proven Claim in all capital letters alongside and proximate to other text and imagery that is product-focused, such as the product flavor, net carbohydrates, protein content, fiber content, and "free from" statements.

39.     The following exemplars depict Defendant's use of the Clinically Proven Claim on the packaging of each of its SlimFast Products.  The packaging of each and every one of the SlimFast Products displays the Clinically Proven Claim in substantially the same way.

40.     The following is the product packaging for the SlimFast Original Shake Mix:



*See* https://shop.slimfast.com/collections/shake-mixes/products/slimfast-original-shake-mixes/?utm_source=slimfast.com&utm_medium=header_nav (last viewed on September 29, 2021).

    41.    The following is the product packaging for the SlimFast Advanced Nutrition Shake:



*See* https://shop.slimfast.com/collections/ready-to-drink/products/slimfast-advanced-nutrition-shakes/?utm_source=slimfast.com&utm_medium=header_nav (last viewed on September 29, 2021).

42.    The following is the product packaging for the SlimFast Advanced Energy Shake:



*See* https://shop.slimfast.com/collections/ready-to-drink/products/slimfast-advanced-energy-shakes/?utm_source=slimfast.com&utm_medium=header_nav (last viewed on September 29, 2021).

43.     On both its website and the SlimFast App, Defendant makes the same Clinically Proven Claim with respect to each of the SlimFast Products by featuring images of the packaging for each of the SlimFast Products.  Significantly, the location of the claims are not appended to

14

either the brand name, nor to any reference to the program as a whole.  Rather, in every case, the "Clinically Proven" claim is in its own box, and the word "Proven" is uniformly bolded, with twice the font size of the other seven (7) words in the claim.  There can be no reasonable interpretation other than that the claim is tied to the product.

**III.**    **The Clinically Proven Claim is False and Designed to Deceive Consumers.**

44.    Reasonable consumers understand the Clinically Proven Claim to convey that each SlimFast Product on which it appears has been clinically proven to cause and maintain weight loss.

45.    Defendant's Clinically Proven Claim, however, is patently false and misleading with respect to each of the SlimFast Products on which it appears because, among other things, the purported clinical studies and reports relied upon by Defendant to support its Clinically Proven Claim are <u>not</u> about the efficacy of the actual product to which the "Clinically Proven" moniker is attached.  There is no transitive property of "Clinically Proven" to untested products.

46.    As set forth in both the NAD Decision and NARB Decision, Defendant has acknowledged "that SlimFast has not clinically tested the weight-loss efficacy of any of its current products that bear the claim 'clinically proven to lose weight and keep it off.'"[9] Moreover, as the NAD noted in its Decision, Defendant did not dispute the fact that all of the clinical studies it relies on to support the Clinically Proven Claim tested products and plans that are different from any of the current SlimFast Product and Plans.[10]

47.    Accordingly, the Clinically Proven Claim is false and misleading with respect to each of the SlimFast Products.

---

[9]    NAD Decision at 6.

[10]    NAD Decision at 6.

**IV.** **To the Extent Defendant Maintains that its Clinically Proven Claim is Qualified by Referencing the Use of the SlimFast Products as Part of the SlimFast Plan, it Nevertheless is False and Misleading.**

48.     During the NAD proceeding, SlimFast tried to avoid the deception of, and its inability to prove, the Clinically Proven Claim by asserting that the Clinically Proven Claim was qualified by an obscured and all-together hidden reference to "when used as part of the SlimFast Plan" (the "Purported Claim Qualification").  Plaintiffs did not see and were not aware of the Purported Claim Qualification at the time that each purchased the SlimFast Products.  Nor would any purchaser reasonably be expected to detect (let alone understand the significance of) that "disclosure."  Unlike the Clinically Proven Claim, which is prominently featured on the front of each SlimFast Product package in all capital letters, the Purported Claim Qualification is inconspicuous – almost microscopic – appearing only on either the back or bottom of the product packaging (depending on the product), in tiny print, below multiple paragraphs of other information and, depending on the SlimFast Product, below pictures of other SlimFast Products.

49.     The following is an example of how the Purported Claim Qualification appears, if at all, on the product packaging of the SlimFast Products:



*See* https://smile.amazon.com/SlimFast-Snacks-Peanut-Butter-Grams/dp/B07H7NPY5D/ref=sr_1_5?dchild=1&keywords=slimfast+keto+fat+bomb+snack+cup&qid=1632967641&rdc=1&sr=8-5 (last viewed on September 29, 2021).

50.      Significantly, the Purported Claim Qualification relates not to the efficacy of the product, but rather the speed at which one should expect to see "results in just one week." Implicit in that representation is the understanding that non-adherence to the "SlimFast Plan,"

would not negate all efficacy, rather it would just delay a rapid result.  Moreover, virtually anyone would be challenged to find, see, and read the Purported Claim Qualification.  As echoed by the NAD, it is highly unlikely that any consumer will see the Claim Qualification.  *See* NAD Decision at 4 (the "NAD determined that the 'when used as part of the SlimFast Plan' was not clear and conspicuous because it appears on the back of the package while the prominent clinically proven claim appears on the front of [sic] package.  Therefore, it is unlikely that consumers will see the disclosure.  In addition, NAD was concerned that the disclosure does not appear on the website or smart phone app.") (citations omitted).

51.    Moreover, as the NAD noted, the Purported Claim Qualification ***does not appear on*** either the SlimFast website or the SlimFast App, as only images of the front of SlimFast Product packaging materials are contained on the website and SlimFast App.

52.    On appeal, the NARB specifically distinguished between the Clinically Proven Claim on each of the SlimFast Products from the "Clinically Proven: Lose Weight and Keep it Off" claim relating to the "SlimFast Plan."  NARB found that the Clinically Proven Claim on the SlimFast Products "reasonably communicated" the message that the "individual SlimFast food products have been clinically proven to result in weight loss."  But because SlimFast acknowledges that its individual products have not been clinically evaluated, the NARB concluded that that the "unqualified clinically-proven claims for the products are unsubstantiated."

## V.    <u>Plaintiffs Purchased the SlimFast Products.</u>

53.    Beginning in or about early 2021, Plaintiff Cawley purchased the Advanced Nutrition Shakes and SlimFast meal replacement bars at her local ShopRite (Scarsdale, NY) and Target (Mt. Vernon, NY) retailers.  Plaintiff Cawley repeatedly purchased these products over an approximately three-month period.

54.     Beginning in or about early 2020 and at other times, Plaintiff Kuciver purchased the SlimFast Original Rich Chocolate Royale Meal Replacement Shakes at Jewel-Osco, 343 W Irving Park Rd, Wood Dale, IL 60191

55.     Prior to purchasing the SlimFast Products, Plaintiffs were exposed to Defendant's on-line, social media advertising regarding its Clinically Proven Claim.  In addition, Plaintiffs reviewed the product packaging, which stated that the SlimFast Product was "clinically proven" to achieve and maintain weight-loss.

56.     Plaintiffs purchased the SlimFast Products reasonably believing that Defendant's meal replacement products are clinically proven to achieve and maintain weight-loss. Defendant's packaging, and its prominent placement of the "Clinically Proven" claim, are likely to mislead a reasonable consumer acting reasonably under the circumstances to believe that the specific meal replacement products have themselves been the subject of the rigors of clinical testing.  Indeed, both the NAD and the NARB agreed that consumers like Plaintiffs were reasonable in that belief.  According to the NAD, "a reasonable consumer could take away the message that the Advertiser's clinically proven claim refers to any product upon which it appears.  In addition, NAD determined that the "Clinically Proven to Lose Weight & Keep It Off" conveys a clinically proven weight-loss and maintenance message about each individual SlimFast product."  See also NARB Decision at 3 ("One of the messages reasonably communicated by the "clinically proven – lose weight & keep it off" claim on the package is that individual SlimFast food products have been clinically proven to result in weight loss.")

57.     Had Plaintiffs known that the SlimFast Product was not clinically proven to achieve and maintain weight-loss, they would not have purchased them.  At the very least,

Plaintiffs would not have paid the price premium charged for SlimFast meal replacement products that purport to have been clinically proven to achieve and maintain weight-loss.

58.    Plaintiff Cawley could have purchased superior and less costly high protein shakes without the false Clinically Proven Claim hype.  For example, instead of the SlimFast Advanced Nutrition shakes that contain 20 grams of protein, 7 grams of carbohydrates and 180 calories and cost $2.00 - $2.25 each, Cawley could have purchased the superior and less costly Premier Protein brand shakes that contains 30 grams of protein, 5 grams of carbs and 160 calories, and cost $1.66 per shake.  Amazon customers also give Premier Protein shakes higher ratings than SlimFast Advanced Nutrition shakes.  Similarly, instead of the falsely hyped SlimFast meal replacement bars with 15 grams of protein, 24 grams of carbohydrates and 180 calories which cost $2.00 per bar, she could have purchased the superior Pure Protein brand bars with 20 grams of protein, 17 grams of carbohydrates and 190 calories, and cost $1.12 per bar. Further, the Pure Protein brand bars have much higher customer ratings on Amazon than the SlimFast bars.

59.    Plaintiff Kuciver could have avoided the over-priced SlimFast Original Rich Chocolate Royale Meal Replacement Shakes with their false claims that have 10 grams of protein, 25 grams of carbohydrates and 180 calories, and cost $2.00-2.25 per shake, and instead purchased superior Carnation shakes made by Nestlé that have 13 grams of protein, 16 grams of carbohydrates and 150 calories, and cost only $.87 per shake.  The Carnation shakes also have higher customer ratings than the SlimFast shakes on Amazon.

## CLASS DEFINITION AND ALLEGATIONS

**New York Class**

60.     Plaintiff Cawley brings this action on behalf of herself and all other similarly

situated consumers in the State of New York pursuant to Rule 23 of the Federal Rules of Civil

Procedure, and seeks certification of the following subclass (the "New York Class"):

> All consumers who, within the applicable statute of limitations
> period, purchased in the State of New York (whether online or in-
> person) SlimFast Products – manufactured, marketed, distributed
> and/or sold by Defendant which Defendant warranted as being
> "CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF" (the
> "Class Products").  Excluded from the class are Defendant, its
> parents, subsidiaries, affiliates, officers and directors, judicial
> officers and their immediate family members and associated court
> staff assigned to this case, and those who purchased Class Products
> for resale.

61.     Plaintiff Cawley expressly disclaims any intent to seek any recovery in this action

for personal injuries that she or any New York Class member may have suffered.

**Illinois Class**

62.     Plaintiff Kuciver brings this action on behalf of herself and all other similarly

situated consumers in the State of Illinois pursuant to Rule 23 of the Federal Rules of Civil

Procedure, and seeks certification of the following subclass (the "Illinois Class"):

> All consumers who, within the applicable statute of limitations period, purchased
> in the State of Illinois (whether online or in-person) SlimFast Products –
> manufactured, marketed, distributed and/or sold by Defendant which Defendant
> warranted as being "CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF"
> (the "Class Products").  Excluded from the class are Defendant, its parents,
> subsidiaries, affiliates, officers and directors, judicial officers and their immediate
> family members and associated court staff assigned to this case, and those who
> purchased Class Products for resale.

63.     Plaintiff Kuciver expressly disclaims any intent to seek any recovery in this action

for personal injuries that she or any Illinois Class member may have suffered.

64.     The New York Class subclass and the Illinois Class subclass are collectively referred to as the "Classes"

65.     **Numerosity**.  This action is appropriately suited for a class action.  The members of the Classes are so numerous that joinder of all members of the Classes is impracticable. Plaintiffs are informed, believe, and thereon allege, that the proposed Classes each contain thousands of purchasers of the Class Products who have been damaged by SlimFast's conduct as alleged herein.  The precise number of each Class's members is unknown to Plaintiffs.

66.     **Existence and Predominance of Common Questions of Law and Fact**.  This action involves questions of law and fact common to the Classes.  The common legal and factual questions for the New York Class include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 349.

- Whether Defendant's conduct, as alleged herein, constitutes violations of New York General Business Law Section 350.

- Whether Defendant labeled, advertised, marketed, and/or sold each Class Product as "clinically proven" to cause and maintain weight loss.

- Whether Defendant's labeling, advertising, marketing, and/or selling of each Class Product as clinically proven to cause and maintain weight loss was and/or is false, fraudulent, deceptive, and/or misleading.

67.     The common legal and factual questions for the Illinois Class include, but are not limited to, the following:

- Whether Defendant's conduct, as alleged herein, constitutes violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq.

- Whether Defendant labeled, advertised, marketed, and/or sold each Class Product as "clinically proven" to cause and maintain weight loss.

- Whether Defendant's labeling, advertising, marketing, and/or selling of each Class Product as clinically proven to cause and maintain weight loss was and/or is false, fraudulent, deceptive, and/or misleading.

68.    **Typicality**.  Plaintiffs' claims are typical of the claims of the members of their respective Class, because, *inter alia*, all the Classes' members have been injured through the uniform misconduct described above and were subject to SlimFast's blatant misrepresentations of material information.  Moreover, Plaintiffs' claims are typical of their respective Class members' claims.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of their respective Class.

69.    **Adequacy of Representation**.  Plaintiffs will fairly and adequately protect the interests of the members of their respective Class.  Plaintiffs purchased a Class Product, and they were harmed by SlimFast's deceptive misrepresentations.  Plaintiffs have therefore suffered an injury in fact as a result of SlimFast's conduct, as did all members of their respective Class who purchased Class Products.

70.    **Superiority**.  A class action is superior to other methods for the fair and efficient adjudication of this controversy.  The damages or other financial detriment suffered by individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against SlimFast.  It would be virtually impossible for a member of each Class, on an individual basis, to obtain effective redress for the wrongs done to him or her.  Further, even if the members of each Class could afford such individualized litigation, the court system could not.  Individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts.  Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the

benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single court, and presents no management difficulties under the circumstances here.

71.     Plaintiffs seeks monetary damages, including statutory damages on behalf of each of their respective Class, and other equitable relief on grounds generally applicable to each entire Class, to enjoin and prevent SlimFast from engaging in the acts described.  Unless the Classes are certified, SlimFast will be allowed to profit from its deceptive practices, while Plaintiffs and the members of their respective Class will have suffered damages.  Unless a Classes-wide injunction is issued, SlimFast will continue to commit the violations alleged, and the members of the Classes and the general public will continue to be deceived.

72.     SlimFast has acted and refused to act on grounds generally applicable to both Classes, making final injunctive relief appropriate with respect to both Classes as a whole.

<u>**As and for a First Cause of Action**</u>
**(New York Class - Violation of New York General Business Law Section 349)**

73.     Plaintiff Cawley realleges and incorporates by reference the allegations in paragraphs 1 through 72 as if fully set forth herein.

74.     New York General Business Law § 349 prohibits "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York]."

75.     By labeling, advertising, marketing, distributing, and/or selling each Class Product to Plaintiff and the other Class members as "CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF" SlimFast engaged in, and continues to engage in, deceptive acts and practices because the Class Products are not, in fact, clinically proven to cause and maintain weight loss.

76.     In taking these actions, SlimFast failed to disclose material information about its products, which omissions were misleading in a material respect to consumers and resulted in the purchase of SlimFast's products.

77.     SlimFast has deceptively labeled, advertised, marketed, promoted, distributed, and sold the Class Products to consumers.

78.     SlimFast's conduct was consumer oriented.

79.     SlimFast engaged in the deceptive acts and/or practices while conducting business, trade, and/or commerce and/or furnishing a service in New York.

80.     SlimFast's misrepresentations were misleading in a material respect as to whether the efficacy of each Class Product is clinically proven.

81.     SlimFast knew, or should have known, that by making the misrepresentations addressed herein, Plaintiff and other consumers would be misled into purchasing SlimFast's Products and/or paying a premium price for the SlimFast Products.

82.     Plaintiff Cawley and the New York Class members have been aggrieved by and have suffered losses as a result of SlimFast's violations of Section 349 of the New York General Business Law.  By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff Cawley and the members of the New York Class have been substantially injured by purchasing and/or overpaying for a product that is not what SlimFast represents it to be.

83.     By reason of the foregoing, SlimFast's conduct, as alleged herein, constitutes deceptive acts and practices in violation of Section 349 of the New York General Business Law, and SlimFast is liable to Plaintiff Cawley and the New York Class for the actual damages that

they have suffered as a result of SlimFast's actions, the amount of such damages to be

determined at trial, plus statutory damages, treble damages, and attorneys' fees and costs.

84.     SlimFast's conduct, as alleged herein, in violation of Section 349 of the New

York General Business Law was engaged in by SlimFast willfully and/or knowingly.

Accordingly, Plaintiff Cawley and members of the New York Class are entitled to an award of

damages above and beyond their actual damages in accordance with Section 349(h) of the New

York General Business Law.

85.     Plaintiff Calwey further demands injunctive relief enjoining SlimFast from

continuing to engage in, use, or employ any act, including advertisements, packaging, or other

representations, prohibited by Section 349 of the New York General Business Law.

<u>**As and for a Second Cause of Action**</u>
**(New York Class - Violation of New York General Business Law Section 350)**

86.     Plaintiff Cawley realleges and incorporates by reference the allegations in

paragraphs 1 through 72 as if fully set forth herein.

87.     SlimFast's labeling, marketing, and advertising of the Class Products is

"misleading in a material respect," as it fails to disclose to consumers material information in

SlimFast's sole possession and, thus, is "false advertising."

88.     No rational individual would purchase the Class Products at the premium prices at

which they are sold in full knowledge that they are not clinically proven to cause and maintain

weight loss, which is how SlimFast markets the Class Products.

89.     SlimFast's advertisements and marketing of the Class Products as

"CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF" were consumer oriented.

90.     SlimFast's advertisements and marketing of the Class Products as "CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF" were misleading in a material respect.

91.     By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce in New York, Plaintiff Cawley and the members of the New York Class have been substantially injured by overpaying for a product that has diminished value due to its false claim of being "clinically proven."

92.     SlimFast's conduct, as alleged herein, constitutes false advertising in violation of Section 350 of the New York General Business Law, and SlimFast is liable to Plaintiff Cawley and the members of the New York Class for the actual damages that they have suffered as a result of SlimFast's actions, the amount of such damages to be determined at trial, statutory damages, plus treble damages, and attorneys' fees and costs.

93.     SlimFast continues to violate Section 350 of the New York General Business Law and continues to aggrieve Plaintiff Cawley and the members of the New York Class.

94.     Plaintiff Cawley further demands injunctive relief enjoining SlimFast from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Section 350 of the New York General Business Law.

### COUNT III
**(Illinois Class - Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq.)**

95.     Plaintiff realleges and incorporates by reference the allegations in paragraphs 1 through 72 as if fully set forth herein.

96.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), 815 ILCS 505/1, et seq. prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false

promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact … in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby."

97.     By labeling, advertising, marketing, distributing, and/or selling each Class Product to Plaintiff Kuciver and the other Illinois Class members as "CLINICALLY PROVEN LOSE WEIGHT & KEEP IT OFF" SlimFast engaged in, and continues to engage in, deceptive acts and practices because the Class Products are not, in fact, clinically proven to cause and maintain weight loss.

98.     In taking these actions, SlimFast failed to disclose material information about its products, which omissions were misleading in a material respect to consumers and resulted in the purchase of SlimFast's products.

99.     SlimFast has deceptively labeled, advertised, marketed, promoted, distributed, and sold the Class Products to consumers.

100.     SlimFast's conduct was consumer oriented.  Plaintiff is a consumer for purposes of the ICFA because she purchased Slimfast products for her own use.

101.     SlimFast engaged in the deceptive acts and/or practices which directly and indirectly affected the people of Illinois.

102.     SlimFast's misrepresentations were misleading in a material respect as to whether the efficacy of each Class Product is clinically proven.

103.     SlimFast knew, or should have known, that by making the misrepresentations addressed herein, Plaintiff Kuciver and other consumers would be misled into purchasing SlimFast's Products and/or paying a premium price for the SlimFast Products.

104.   Plaintiff Kuciver and the Illinois Class members have been aggrieved by and have suffered losses as a result of SlimFast's violations of the ICFA.  By virtue of the foregoing unfair, unconscionable, and deceptive acts in the conduct of trade or commerce, Plaintiff Kuciver and the members of the Illinois Class have been substantially injured by purchasing and/or overpaying for a product that is not what SlimFast represents it to be.

105.   By reason of the foregoing, SlimFast's conduct, as alleged herein, constitutes deceptive acts and practices in violation of the ICFA, and SlimFast is liable to Plaintiff Kuciver and the Illinois Class for the actual damages that they have suffered as a result of SlimFast's actions, the amount of such damages to be determined at trial, together with attorneys' fees and costs pursuant to Section 505/10(a) and (c) of the ICFA.

106.   SlimFast's conduct, as alleged herein, in violation of the ICFS was outrageous and engaged in by SlimFast willfully, maliciously and with deliberate indifference to the rights of the members of the Class.  Accordingly, Plaintiff and members of the Class are entitled to an award of punitive damages above and beyond their actual damages.

107.   Plaintiff further demands injunctive relief pursuant Section 505/10(c) of the ICFA enjoining SlimFast from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by the ICFA.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment against SlimFast as follows:

A.   Certifying this action as a class action with subclasses, pursuant to FRCP 23(c)(3)(5), comprised of the New York Class subclass and the Illinois Class subclass as defined above as soon as practicable, designating Plaintiff Cawley as the named New York Class

representative and Plaintiff Kuciver as the named Illinois Class representative, and designating the undersigned as Class Counsel.

      B.      On Plaintiff Cawley's Count I, awarding against SlimFast the damages that Plaintiff Cawley and the other members of the New York Class have suffered as a result of SlimFast's actions, the amount of such damages to be determined at trial, plus statutory damages and treble damages.

      C.      On Plaintiff Cawley's Count II, awarding against SlimFast the damages that Plaintiff Cawley and the other members of the New York Class have suffered as a result of SlimFast's actions, the amount of such damages to be determined at trial, plus statutory and treble damages.

      D.      On Plaintiff Kuciver's Count III, awarding against SlimFast the damages that Plaintiff Kuciver and the other members of the Illinois Class have suffered as a result of SlimFast's actions, the amount of such damages to be determined at trial, together with punitive damages.

      E.      On Counts I, II, and III, awarding Plaintiffs and their respective Class interest, costs, and attorneys' fees.

      F.      Enjoining SlimFast from continuing to engage in, use, or employ any act, including advertisements, packaging, or other representations, prohibited by Sections 349 and/or 350 of the New York General Business Law and the ICFA.

      G.      Awarding Plaintiffs and their respective Class such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated:      May 16, 2022
White Plains, New York

**DENLEA & CARTON LLP**

By:      */s/ Jeffrey I. Carton*
James R. Denlea
Jeffrey I. Carton
Steven R. Schoenfeld
2 Westchester Park Drive, Suite 410
White Plains, New York 10604
Tel.: (914) 331-0100
Fax: (914) 331-0105
jdenlea@denleacarton.com
jcarton@denleacarton.com
sschoenfeld@denleacarton.com

KRAVIT SMITH LLP

Philip M. Smith
75 South Broadway, Suite 400
White Plains, New York 10601
Tel.: (646) 433-8004
Fax: (917) 858-7101
psmith@kravitsmithllp.com

*Attorneys for Plaintiff Jaimie Cawley*

-and-

SHEEHAN & ASSOCIATES, P.C.
Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com

*Attorneys for Plaintiff Debbie Kuciver*